**Marquis Aurbach Coffing**
DALE A. HAYES, ESQ.
Nevada Bar No. 3430
LIANE K. WAKAYAMA, ESQ.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile (702) 856-8900
dhayes@maclaw.com
lwakayama@maclaw.com
    Attorneys for Plaintiffs

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

WILLIAM A. GAYLER,

                    Debtor.

Case No: BK-S-09-31603-MKN
Chapter 7

Adversary Proceeding No: 11-01088-MKN

BARRY R. MOORE; JANIE MOORE; EROOM HOLDINGS, LP; and BARRY R. MOORE AND JANIE MOORE, CO-TRUSTEES OF THE BAMM LIVING TRUST DATED JULY 16, 2003,

                    Plaintiffs,

v.

WILLIAM GAYLER,

                    Defendant.

## MOTION TO APPROVE SETTLEMENT AGREEMENT

Plaintiffs Barry R. Moore ("Moore"), Janie Moore, Eroom Holdings, LP ("Eroom"), and Barry R. Moore and Janie Moore, Co-Trustees of the BAMM Living Trust dated July 16, 2003 ("BAMM") (collectively "Plaintiffs"), by and through their attorneys of record, the law firm of Marquis Aurbach Coffing, hereby file this Motion to Approve Settlement Agreement. This Motion is made and based upon the attached Memorandum of Points and Authorities, the pleadings and papers on file herein, and any oral argument by counsel permitted at the hearing on this matter.

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**MEMORANDUM OF POINT AND AUTHORITIES**

**I.**   **INTRODUCTION**

During the settlement conference, the parties reached a compromise resolving this litigation. The purpose of this adversary proceeding was to ensure that Debtor/Defendant William A. Gayler ("Gayler") did not gain a fresh start as a result of defrauding the Plaintiffs out of close to $1.5 Million in cash. Fully prepared to prosecute their 523(a) causes of action, the Plaintiffs agreed to alleviate the risks and costs associated with trial. As a result, Gayler agreed that a non-dischargeable judgment shall be entered against him pursuant to 11 U.S.C. 523(a)(2)(A) in the amount of $750,000. In full satisfaction of the 523(a)(2)(A) judgment, Gayler shall pay the Plaintiffs $150,000 within the year – a fraction of the damages claimed by the Plaintiffs. Upon Gayler's default, the Plaintiffs retain the exclusive right to collect the full $750,000 from Gayler. Consistent with the standards governing Fed. R. Bankr. P. ("FRBP") 9019 and the application of the A&C Test, the settlement should be approved in its entirety.

**II.**   **STATEMENT OF FACTS**

An Involuntary Chapter 7 Petition for Relief was filed against Gayler on November 16, 2009.[1] An Order Granting Interim Relief pursuant to 11 U.S.C. §303(f) was entered on December 17, 2009.[2] An Order for Relief in the involuntary case was issued on March 29, 2010.[3]

The Court extended the time for the deadlines provided under FRBP 4004 and 4007 up to and including March 15, 2011.[4] On March 15, 2011, Plaintiffs timely filed their Adversary Complaint Objecting to Discharge or to Determine Dischargeability under the standards set forth in 11 U.S.C. 523(a)(2) and 11 U.S.C. 523(a)(4) (the "Adversary Complaint").[5] In the Answer

---

[1] See Dkt. #1.

[2] See Dkt. #32.

[3] See Dkt. #85.

[4] See Dkt. #172.

[5] See Dkt. #1.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

filed on April 29, 2011, Gayler's position is that the Plaintiffs should "take nothing by way of the Adversary Complaint."[6]   The parties have engaged in discovery and trial is currently scheduled for February 4, 5, 6, 7 & 8, 2013.[7]

## A.   THE ADVERSARY PROCEEDING.[8]

In the Adversary Complaint, Plaintiffs assert facts to support non-dischargeability due to fraud (11 U.S.C. § 523(a)(2)) and fraud or defalcation while acting in a fiduciary capacity (11 U.S.C. § 523(a)(4)) in relation to the following entities managed by Gayler for the benefit of the Plaintiffs as members: (a) CH Angelus, LLC ("Angelus I") and CH Angelus II, LLC ("Angelus II"); (b) Ch. Angelus Partners, LLC ("Angelus Partners") and One Hundred Year, LLC ("One Hundred Year"); and (c) Maya I-215, LLC ("Maya") and Screaming Eagle, LLC ("Screaming Eagle").

In each of these investments, an operating agreement governed the rights, powers and duties of Gayler as the manager/managing member and the non-managing members.   Within Section 7.03 of the Operating Agreements for Angelus I, Angelus II and One Hundred Year, Gayler explicitly recognized his fiduciary duties owed to the non-managing members including the Plaintiffs.   As for Maya, Gayler was the controlling managing member of Screaming Eagle (the manager of Maya).   As the managing member, Gayler was under an affirmative duty to report to the non-managing members on a regular basis.   Gayler was therefore under a duty to speak and disclose any material facts in relation to each of these investments to the Plaintiffs.

### 1.   Angelus I, Angelus II, Angelus Partners and One Hundred Year.

Angelus I is a Nevada limited liability company and was formed for the express purpose to acquire the right, title and interest in APN 176-10-101-002 (the "Angelus I Property") for long term investment.   Angelus II is a Nevada limited liability company and was formed for the

---

[6] See Dkt. #7.

[7] See Dkt. #36.

[8] The facts contained in this section are supported by the allegations contained in the Adversary Complaint, the pleadings on file herein and the evidence produced by the Plaintiffs pursuant to FRBP 7026 and FRCP 26.

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

purpose of acquiring the right, title and interest in APN 176-10-101-012 (the "Angelus II Property") for long term investment. The Angelus I Property and the Angelus II Property are each five-acre undeveloped parcels situated near the southeast corner of Buffalo and Warm Springs Road in Clark County, Nevada.

At the time Gayler induced Plaintiff BAMM to invest in the Angelus I and Angelus II investments, Gayler represented that the power to enter into a secured loan and sell the LLCs' property (a total of 11.25 acres) vested in the non-managing members. Justifiably relying on Gayler's representations as confirmed in the Operating Agreements, Plaintiff BAMM entrusted Gayler to manage its investments. Gayler, however, had a hidden agenda as he was focused on selling 20 acres as one assemblage even though the parcels were owned by entities other than Angelus I and Angelus II. The most profitable parcel of this assemblage was the corner piece that fronted Buffalo and Warm Springs Road owned solely by Gayler through an entity called Angelus Partners. To effectuate his self-serving plan to obtain the highest profit for himself, Gayler repeatedly encumbered the property owned by Angelus I and Angelus II without the knowledge or consent of the non-managing members.

When property owned by One Hundred Year sold, Gayler secretly used Plaintiff Eroom's proceeds to pay down debt on the Angelus Partners' property that Gayler was solely responsible to pay. In total, Gayler defrauded Plaintiffs BAMM and Eroom out of approximately $564,205.29 through the Angelus I, Angelus II and One Hundred Year investments, which does not include any profits lost as a result of Gayler's refusal to sell properties separate from his secret 20-acre assemblage.

### a.        Angelus I and Angelus II.

Gayler was designated as the Managing Member of Angelus I and Angelus II. As to the restrictions on Gayler's managerial authority, Sections 6.01(d), 7.01(a), 7.01(f), and 8.01(h)-(i) of the Operating Agreements prohibited Gayler from borrowing money and encumbering the LLCs' property unless Gayler first obtained the 51% written consent of the non-managing members.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### (1)    Gayler's Unauthorized Increase of His Membership Interest in Angelus I.

In March 2007, Gayler was presented with two separate offers to purchase the Angelus I Property.  Richard Mader offered to purchase the Angelus I Property for $4,875,000.00; and Robert Rains' purchase offer was for $4,900,000.00.  Gayler, however, refused to entertain either offer and failed to disseminate the offers to the non-managing members of Angelus I.  Instead, Gayler prepared a memorandum dated March 27, 2007 to the Angelus I members seeking the 51% approval to acquire the interest of the Barretts and the Loerwalds and, in doing so; place a $1,600,000.00 encumbrance on the Angelus I Property (the "Gayler Memorandum").  In the Gayler Memorandum, Gayler advised the Angelus I members as follows:

> Two members wish to sell and assign their total 40% ownership of which I am prepared to do provided I get 51% approval to encumber the property by $1,600,000.00 of which it will be my sole responsibility to repay and make payments.  Please indicate your consent, or not, below and fax to 221-8017 at your earliest convenience.

Prior to receiving the non-managing members' votes, Gayler increased his interest in Angelus I by 40% and executed promissory notes in favor of Walter Loerwald ($400,000) and Martin and Robin Barrett ($1.2 Million) without the knowledge or approval of the non-managing members of Angelus I.  The notes were secured by a deed of trust encumbering the Angelus I Property by $1.6 Million.  The $1.6 Million became due on October 1, 2008.

### (2)    The Invalid $2 Million Alper Loan.

To pay off the $1.6 Million indebtedness, Gayler, as Managing Member of Angelus I and Angelus II, borrowed $2 Million from Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust dated March 22, 1999 and Alper Limited Partnership (hereinafter "Alper") and encumbered the LLCs' property with a $2 Million deed of trust (the "Alper Loan").  The Alper Loan was entered into by Gayler without the knowledge, approval or 51% written consent of the non-managing members of Angelus I and Angelus II as required under their respective Operating Agreements.

Of the $2 Million, Gayler absconded with $1.3 Million plus $323,616.28 (the money due to the named borrowers, Angelus I and Angelus II).  Not one dime of the Alper Loan went to the

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

1  benefit of Angelus I, Angelus II, or its membership.  When the Alper Loan became due, Plaintiff

2  BAMM, stood to lose its entire investment in Angelus I and Angelus II based on the manifest

3  self-dealing and fraud committed by Gayler.  Consequently, Plaintiff BAMM claimed damages

4  totaling approximately $252,420.00 representing its pro rata share of the $1,623,616.28 Gayler

5  pocketed.

6  **b.  Angelus Partners and One Hundred Year.**

7  Through entities both non-existent and existent, Gayler acquired the AP Property

8  exclusively through borrowed funds.  The purchase price for the AP Property was $5,450,000.

9  On September 26, 2005, Gayler (on behalf of APAN Wine as managing member of

10  Angelus Partners, not AP) executed a $3,075,000 Note in favor of Conway, Stuart and

11  Woodbury, secured by the AP Property and due in full by September 26, 2006 (the "CSW

12  Loan").  The CSW Loan was extended and due in full by September 24, 2007.  In addition to the

13  CSW loan, Gayler borrowed, as managing member of Angelus II, $3,500,000 from the

14  Alexander Dawson Foundation, secured by property owned by Angelus II (the "ADF Loan").

15  The purpose of the ADF Loan was to complete Gayler's acquisition of the AP Property even

16  though all $3,500,000 was secured by the Angelus II Property.  The ADF Loan and encumbrance

17  was accomplished by Gayler without the knowledge or approval of the non-managing members

18  of Angelus II as required under the Operating Agreement.  Through multiple extensions, the

19  ADF Loan was due by December 28, 2007.

20  **(1)  The Sale of One Hundred Year's Property.**

21  As part of Gayler's inducement of the Plaintiffs to invest in One Hundred Year, Gayler

22  represented that upon the sale of the property, the members had the right to take their pro rata

23  distribution of the proceeds and not participate in any 1031 Tax Deferred Exchange.

24  In or about November 2007, real property owned 68% by One Hundred Year sold

25  generating approximately $3,117,252.85 in sale proceeds.  As managing member of One

26  Hundred Year, Gayler (without the requisite authority) 1031 exchanged all of the sale proceeds

27  into the property owned by Angelus Partners.  Instead of distributing Plaintiff Eroom's (a 10%

28  member) pro rata share of the sale proceeds, Gayler transferred Eroom's interest in the AP

Page 6 of 13

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Property without the knowledge or consent of Eroom.

**(2)     Gayler's Unauthorized Use of One Hundred Year's Funds to Pay off His Debt.**

With the One Hundred Year sale proceeds, Gayler paid off the CSW Loan and paid down the ADF Loan to $2,750,000– all debt incurred as a result of Gayler's acquisition of the AG Partners Property. In or about September 2008, Gayler secured the ADF Loan with the Angelus Partners' Property, which the Alexander Dawson Foundation later foreclosed upon. As a result, Eroom lost its entire investment in One Hundred Year along with its 10% of the sale proceeds. Accordingly, Plaintiff Eroom claimed damages totaling approximately $311,785.29.

**2.      Maya and Screaming Eagle.**

Screaming Eagle and its principals, Gayler and Plaintiff Moore were responsible for managing Maya and overseeing Maya's participation in any joint venture formed to develop approximately 52 acres of undeveloped land located in Clark County, Nevada (the "Project"). In or about May 2002, Maya formed a joint venture with Weingarten Notstat, Inc. (the "Joint Venture").

Throughout the Project and Joint Venture, Gayler represented to Moore that any distributions of fees and commissions earned by Screaming Eagle as the manager of Maya would comply with the Operating Agreements. Gayler specifically represented to Moore that Screaming Eagle would make an interim distribution of any excess cash as follows: 50% to Gayler and 50% to Moore until Moore received distributions equal to his initial capital contribution of $300,000. Gayler further represented and assured Moore that any fees received by Screaming Eagle, in its capacity as the manager of Maya, would be split equally among Gayler and Moore.

Contrary to his representations, Gayler failed to return Moore's $300,000 capital contribution and failed to pay Moore 50% of any fees earned under the Agreements. Through his company, ICON Real Estate Companies, Inc. ("ICON") Gayler instead pocketed a total of approximately $905,463 – all money owed to Moore and claimed as part of his damages.

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**B.    SUMMARY OF THE ESSENTIAL TERMS OF THE SETTLEMENT AGREEMENT.**

Pursuant to an Order entered on June 12, 2012, a settlement conference was scheduled to take place on September 11, 2012 at 9:30 a.m. before U.S. Bankruptcy Judge Gregg W. Zive.[9] As scheduled, the parties participated in the court ordered settlement conference and reached a resolution based on the following material terms:[10]

1.    A non-dischargeable judgment shall be entered pursuant to 11 USC 523(a)(2)(A) in the amount of $750,000 (the "523(a)(2)(A) Judgment").[11]

2.    In satisfaction of the 523(a)(2)(A) Judgment, Gayler shall pay the Plaintiffs $50,000 within 90 days from entry of the order approving the settlement agreement and after the appeal time of 14 days has run.  Based on the same timing, Gayler shall pay the Plaintiffs $100,000 within a year;

3.    If Gayler fails to timely make either payment (the $50,000 or the $100,000) or defaults on either payment, the entire 523(a)(2)(A) Judgment shall be subject to execution; and

4.    If Gayler timely makes the $150,000 in payments, the Plaintiffs shall execute a full satisfaction of the 523(a)(2)(A) Judgment.

All material settlement terms were placed on the Court's record and specifically acknowledged by Gayler and the Plaintiffs under oath as a binding agreement.[12]  The Court then instructed the Plaintiffs to prepare a motion pursuant to FRBP 9019 to approve the settlement reached between the parties.[13]

## III.    <u>LEGAL ARGUMENT</u>

Based on the summary of the essential terms contained in this Motion, the Court should approve the settlement reached resolving this adversary proceeding based on: (A) the Ninth

---

[9] See Dkt. #33.

[10] See a copy of the executed Settlement Agreement attached hereto as **Exhibit 1**.

[11] See a copy of the Confession of Judgment attached hereto as Exhibit A to Ex.1

[12] See Dkt. # 42.

[13] Id.

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Circuit's standard for approving settlements and compromises; and (B) the application of the A&C Test.

**A.      STANDARD FOR APPROVAL OF THE SETTLEMENT REACHED.**

The approval of compromises or settlements in bankruptcy proceedings involving property of the estate and/or the trustee are governed by FRBP 9019(a), which provides as follows:

> (a) Compromise.  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FRBP 9019(a).  Local Rule 9019 further denotes that "[o]n its own initiative or at the request of any party in interest, the court may at any time order that a contested matter or adversary proceeding be set for settlement conference."  LR 9019(1).  The plaintiff or moving party must promptly advise the court in writing when any adversary proceeding is settled.  LR 9019(2)(b). When any party gives notice of a motion for the approval of a compromise, that party must either include in the notice a summary of the essential terms of the compromise or serve a copy of the compromise with the notice.  LR 9019(2)(c).  Although this settlement neither involves estate assets nor the trustee, Rule 9019 and the case law construing it are nonetheless instructive.

Whether a compromise should be accepted or rejected lies within the sound discretion of the Court.  See In re A&C Properties, 784 F.2d 1377, 1380 (9th Cir. 1986) (citing In re Transcon. Energy Corp., 764 F.2d 1296, 198-99) (9th Cir. 1985); Matter of Walsh Constr., Inc., 669 F.2d 1325, 1328 (9th Cir. 1982); and In re Blair, 538 F.2d 849, 851 (9th Cir. 1976)).  A settlement may be approved if it is fair and equitable when comparing the claims being compromised against the likely rewards of litigation.  In re Hyloft, 451 B.R. 104, 109 (Bankr. D.Nev. 2011) (citation omitted).  "When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues."  Id. (quoting Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (9th Cir. BAP 1997).  In other words, a "mini-trial" on the merits of the underlying cause of action is not required and should not be undertaken by the bankruptcy court.  Blair, 538 F.2d at 851-52.  Otherwise, there would be no point in reaching a settlement,

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  and the parties may as well try the case.  Hyloft, 451 B.R. at 109 (citing Suter v. Goedert, 396

2  B.R. 535, 548 (Bankr. D.Nev. 2008).   Public policy therefore favors pretrial compromises

3  because litigation "can occupy a court's docket for years on end, depleting resources of the

4  parties and the tax payers while rendering meaningful relief elusive."  In re Grau, 267 B.R. 896,

5  899 (Bankr. S.D.Fla. 2001) (quoting Matter of Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996)).

6       The settlement reached between the parties was negotiated at arm's length and made in

7  good faith.  In exercising its discretion and consistent with the public policy favoring settlements,

8  the Court should approve the settlement as it is fair, equitable and reasonable serving to

9  immediately resolve the entire adversary proceeding.

10   **B.**   **BASED ON THE APPLICATION OF THE A&C TEST, THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE**

11       **APPROVED.**

12       In order to determine whether a proposed settlement is fair and equitable, the Ninth

13  Circuit mandates that a court must consider: (1) the probability of success in the litigation of the

14  dispute; (2) the difficulties to be encountered, if any, in the collection of an award; (3) the

15  complexity, expense, inconvenience and delay of litigation; and (4) the interest of creditors in the

16  case, giving deference to any reasonable views expressed.  See A&C Properties, 784 F.2d at

17  1381.  The party seeking approval of a compromise has the burden of persuasion.  Id.  The party,

18  however, is not necessarily required to satisfy each of these factors as long as the factors as a

19  whole favor approving the settlement.  See In re Pacific Gas and Electric Co., 304 B.R. 395, 417

20  (Bankr. N.D.Cal. 2004); In re WCI Cable, Inc., 282 B.R. 457, 473-74 (Bankr. D.Or. 2002).

21  Taken together as a whole, the application of the A&C Test warrants approval of the settlement

22  reached in this adversary proceeding.

23       **1.**   **The Probability of Success in the Litigation.**

24       The basis for a 523(a) non-dischargeable judgment in favor of the Plaintiffs involves six

25  different LLCs managed by Gayler where he engaged in fraudulent conduct over the span of

26  seven years.  Through discovery, the Plaintiffs have produced almost 6,500 documents and

27

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

identified approximately 28 witnesses to support their Section 523(a) causes of action.[14]  Indeed, at no time during this litigation has Gayler ever disputed that he walked away with the debts at issue resulting in damages to the Plaintiffs for close to $1.5 Million.  The Plaintiffs thus enjoy a high probability of success in prevailing against Gayler.

Although there are many facts that trigger fraud alarms, the outcome of litigating the Plaintiffs' Section 523(a) causes of action is uncertain as litigation is in itself inherently risky.  The settlement reached therefore properly addresses the risk each of the parties face in proceeding through trial by stipulating to the 523(a)(2)(A) Judgment to be satisfied by Gayler at a fraction of the damages ($150,000) claimed by the Plaintiffs.

### 2.    Collection Concerns.

Even if the Plaintiffs are successful in obtaining a non-dischargeable judgment for the total amount claimed (approximately $1,469,668.29), there is no guarantee of collection.  The settlement provides for full satisfaction of the $750,000 523(a)(2)(A) Judgment over the next year, with no interest accruing during that time, costing Gayler only $150,000.  This repayment plan provides a workable means for Gayler to repay the debts claimed without forcing the Plaintiffs to initiate collection proceedings if it is the prevailing party.  With this arrangement, all parties involved benefit as it precludes the incurrence of unnecessary legal fees and other costs associated with collection efforts.   It further benefits Gayler as it resolves a potential $1,469,668.29 non-dischargeable judgment at the fraction of the cost to Gayler ($0.10 on the dollar).   The settlement reached will therefore serve to put to rest questions concerning collections by the Plaintiffs should they ultimately prevail on the merits.

### 3.    Complexity, Expense and Delay of Litigation.

Unraveling the maze of Gayler's fraudulent activity is factually and inherently complex.  In addition, obtaining a non-dischargeable judgment based on claims for fraud (11 U.S.C.

---

[14] See Plaintiffs' FRBP 7026 and Fed R. Civ. P. Rule 26(a)(1) List of Witnesses and Documents received on September 12, 2011; Plaintiffs' First Supplemental FRBP 7026 and Fed R. Civ. P. Rule 26(a)(1) List of Witnesses and Documents mailed on February 9, 2012; and Plaintiffs' Second Supplemental FRBP 7026 and Fed R. Civ. P. Rule 26(a)(1) List of Witnesses and Documents mailed on April 16, 2012  Given the voluminous amount of documents, these disclosures will be provided to the Court upon request.

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

523(a)(2)(A)) and defalcation while acting in a fiduciary capacity (11 U.S.C. 523(a)(4)) requires substantial attorney fees and litigation costs. The Plaintiffs have demonstrated the willingness to litigate this adversary proceeding through trial and exhaust all post-trial avenues, if necessary, causing Gayler to defend their claims with considerable vigor. Although discovery has closed, preparation for trial alone will necessarily require considerable legal muscle and trial is estimated at five full judicial days due to the volume of documents and number of witnesses involved. Not to mention, if either side obtains an unfavorable result after trial, this litigation could continue for years to come while the parties' navigate through the appellate process.

To avoid the necessarily expensive and drawn out litigation, the settlement will immediately bring resolution to this adversary proceeding. The need to litigate and defend against the Plaintiffs' 523(a) claims will be extinguished, Gayler's liability to the Plaintiffs in this matter is significantly reduced and the Plaintiffs are guaranteed $150,000 in payments – all achieved without any additional litigation expense, risk or delay. The settlement will further result in the vacation of the pretrial conference, any pretrial briefing and the anticipated five-day trial. Thus, the prompt resolution of this adversary proceeding through the contemplated compromise is not only economically beneficial for the parties, but is also judicially economical.

### 4.  **Paramount Interest of Creditors.**

By agreeing to the settlement, the Plaintiffs were mindful that they have already lost close to $1.5 Million as a result of Gayler's fraudulent conduct. The settlement is an attempt, however, to balance the possibility of the Plaintiffs obtaining a non-dischargeable judgment for $1,469,668.29 (not including punitive damages) and Gayler's risk in defending uncertain and expensive litigation. While the Plaintiffs are guaranteed a payment plan that relieves them of the burden of initiating collections should Gayler perform in full, Gayler's potential liability is drastically reduced. After balancing the recovery sought of, at a minimum, $1,469,668.29, against the immediate benefit of reducing any claimed recovery to $150,000 should Gayler timely perform and the release of $1,319,668.29 in claims against the estate, the settlement is the best overall result for this estate.

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

## IV.    CONCLUSION

Consistent with FRBP 9019 and LR 9019, the settlement reached between the parties should be approved to resolve this adversary proceeding. The application of the A&C Test demonstrates that the settlement is fair, equitable and reasonable supporting court approval. The settlement serves to end the anticipated costly and lengthy litigation, reduce Gayler's potential liability and guarantee the Plaintiffs $150,000 without having to exhaust collection proceedings should Gayler perform as agreed upon. The Plaintiffs therefore respectfully request the Court to enter an Order granting the instant Motion in its entirety.

DATED this ___ day of October, 2012.

MARQUIS AURBACH COFFING

By: _____
Dale A. Hayes, Esq.
Nevada Bar No. 3430
Liane K. Wakayama, Esq.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, NV 89145
Attorneys for Plaintiffs

M&A:6277-015 1787430_1 10/22/2012 1:06 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

# Exhibit 1

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is made as of September ___, 2012 by and between Barry Moore, Janie Moore, Eroom Holdings LP ("Eroom") and Barry R. Moore and Janie Moore, Co-Trustees of the BAMM Living Trust dated July 16, 2003 (collectively referred to as the "Plaintiffs") and William A. Gayler ("Gayler"). The Plaintiffs and Gayler are together referred to herein as the "Parties" or each individually as a "Party."

## RECITALS

A.    The Lawsuit. On or about March 15, 2011, the Plaintiffs commenced an Adversary Proceeding in U.S. Bankruptcy Court, District of Nevada against Gayler identified as Case No. BK-S-09-31603-MKN, Adversary Proceeding No. 11-01088-MKN (the "Lawsuit").

  i.    The Lawsuit against Gayler centered primarily around allegations that Gayler, as a trusted fiduciary and managing member of Ch. Angelus, LLC ("Angelus I"), Ch. Angelus II, LLC ("Angelus II"), One Hundred Year, LLC ("One Hundred Year"), Maya I-215, LLC ("Maya") and Screaming Eagle, LLC ("Screaming Eagle") defrauded the Plaintiffs out of approximately $1,469,668.29 for his personal benefit and use.

  ii.    The purpose of the Lawsuit was to obtain a non-dischargeable judgment against Gayler under: (a) 11 U.S.C. 523(a)(2)(A) for actual fraud; and (b) 11 U.S.C. 523(a)(4) for defalcation while acting in a fiduciary capacity.

B.    The Settlement and Release. The Parties desire to forever resolve any and all rights, interests, claims and differences pursuant to the terms of this Agreement and intend this Agreement to be a full and final settlement of all matters between the Parties that have been brought or could have been brought in the Lawsuit. This Agreement shall not in any way affect the claims pending in other legal proceedings against Gayler.

NOW, THEREFORE, in consideration of the mutual covenants, agreements and conditions herein stated, together with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

## ARTICLE I
## PAYMENT TERMS

1.01.    The Payment Plan. The Parties agree that Gayler shall pay the sum of $150,000 to the Plaintiffs as follows:

  (a)    $50,000 shall be paid to the Plaintiffs within 90 days from entry of the U.S. Bankruptcy Court's Order approving this Agreement and after the appeal time of 14 days has expired; and

  (b)    $100,000 shall be paid to the Plaintiffs within one (1) year from entry of the U.S. Bankruptcy Court's Order approving this Agreement and after the appeal time of 14 days has

expired.

1.02.  **Delivery of Installment Payments**. All Installment Payments shall be made within the timeframe as specified in Section 1.01 or the next business day if the payment due date falls on a federally observed holiday or weekend and delivered to the offices of Marquis Aurbach Coffing located at 10001 Park Run Drive, Las Vegas, Nevada 89145 between 8:00 a.m. to 5:00 p.m. PST. All Installment Payments must be submitted in cashier's check form payable to the Marquis Aurbach Coffing's Client Trust Account for the benefit of the Plaintiffs.

1.03.  **Irrevocable Payment Obligations**. Gayler fully recognizes and acknowledges that his obligation to make the Installment Payments as provided in Section 1.01 shall remain in full force and effect even if Gayler is no longer domiciled or residing in the United States of America.

## ARTICLE II
## DEFAULT

2.01.  **Default**. Failure by Gayler to make any of the Installment Payments timely and in full as specified in Article I of this Agreement shall constitute a material default and breach of this Agreement.

2.02.  **Notice of Default**. The Parties agree that a notice of default shall be provided to Gayler requesting that the default be cured within ten (10) calendar days. The ten (10) day cure period shall commence on the date the notice is either personally served or mailed as indicated on the Certificate of Mailing.

(a).  Gayler irrevocably designates Jeffrey R. Sylvester, Esq. as his proper agent to receive all notices required under this Agreement.

(b).  Any and all notices to Gayler shall be in writing and shall be validly given or made if served personally, delivered by a nationally recognized overnight courier service or if deposited in the United States Mail, certified, return receipt requested, postage prepaid, addressed to and delivered to Jeffrey R. Sylvester, Esq. at the law firm of Sylvester & Polednak, Ltd. located at 1731 Village Center Circle, Las Vegas, Nevada 89134.

2.03.  **Failure to Cure**. If Gayler fails to timely cure the default within ten (10) calendar days of notice, then the full and complete balance of the $750,000 principal owed to the Plaintiffs shall immediately become accelerated due and payable by Gayler to the Plaintiffs.

2.04  **Entry of Confession of Judgment**. Upon default and the failure by Gayler to make any of the Installment Payments after the expiration of the ten (10) day notice as provided in Section 2.02, the Plaintiffs shall have every right and remedy available in law and in equity against Gayler including, but not limited to, immediate entry of the Confession of Judgment attached hereto as **Exhibit A**. The Confession of Judgment shall be filed in the U.S. Bankruptcy Court, District of Nevada in and for Clark County, Nevada. The Confession of Judgment shall be treated as a Judgment. Gayler agrees to the contents of the Confession of Judgment in its entirety.

MAC:06277-015 1789229_3 10/4/2012 11:27 AM

(a).     After the Confession of Judgment is filed with the Clerk of the U.S. Bankruptcy Court, District of Nevada in and for Clark County, Nevada, the Parties agree that the Plaintiffs may immediately commence any and all execution proceedings for the collection of the entire $750,000, less any Installment Payments received, including collection costs and attorney fees incurred. Gayler agrees that each payment made after a default shall first be applied to collection costs and attorney fees, then to the accrued interest, and then to the remaining unpaid principal amount of the Judgment.

(b).     The Parties agree that the Confession of Judgment may be recorded and filed as a Judgment and Judgment Lien against any real or personal property owned by Gayler individually as of the filing date of the Confession of Judgment with the Court and continuing until complete satisfaction of the amount of this Confession of Judgment is paid in full to the Plaintiffs.

(c).     The Parties agree to submit to the personal jurisdiction of Nevada, in either state, federal, or bankruptcy court, in the event of any legal action or proceeding arising out of or relating to the Confession of Judgment including, without limitation, the enforcement of any default, breach, or non-compliance with this Confession of Judgment and this Agreement.

(d).     Gayler agrees that the Confession of Judgment entered under 11 U.S.C. 523(a)(2)(A) and in the amount of $750,000 in favor of the Plaintiffs shall be declared non-dischargeable in this or in any future bankruptcy proceeding and that such debt is exempted from discharge under the U.S. Bankruptcy Code.

## ARTICLE III
## MUTUAL RELEASE

3.01.   Release.   Upon mutual execution and delivery of this Agreement and after full satisfaction of all Installment Payments as set forth in Article I, the Parties release each other as follows:

(a).     The Plaintiffs and their respective representatives, predecessors, owners, and through any interest held in any of the entities mentioned in this Agreement, do hereby forever release and discharge Gayler from any and all claims, demands, actions, causes of action, obligations, costs, expenses, attorney fees damages, losses and liabilities of whatsoever nature, character or kind, whether known or unknown, suspected or unsuspected, matured or contingent, which arise solely out of the Lawsuit. This Release does not apply to any other lawsuits, claims, defenses, or causes of action that the Plaintiffs have or may have against Gayler or any of his entities, trusts, representatives, affiliates, and agents.

(b).     Gayler does hereby forever release and discharge the Plaintiffs and their respective representatives, predecessors, owners, agents, employees, attorneys, and any of the entities mentioned in this Agreement from any and all claims, demands, actions, causes of action, obligations, costs, expenses, attorney fees damages, losses and liabilities of whatsoever nature, character or kind, whether known or unknown, suspected or unsuspected, matured or contingent, which arise out of the Lawsuit.

3

MAC:06277-015 1789229_3 10/4/2012 11:27 AM

    3.02.  **Court Approval**. Upon mutual execution and delivery of this Agreement, the Plaintiffs shall seek approval from the U.S. Bankruptcy Court, District of Nevada of the terms of the settlement reached as contained in this Agreement.

    3.03.  **Representations and Warranties**. The Parties to this Agreement represent and warrant that they are the sole and exclusive owners of their respective claims, demands, causes of action, obligations and/or liabilities and that no other party has any right, title or interest whatsoever in said causes of action and the other matters referred to herein and that there has been and will be no assignment, conveyance or other disposition by them of any said causes of action or other matters referred to herein. Without in any way limiting the generality of the foregoing, the Parties represent and warrant that each of them did not and will not in the future assign, convey or transfer any of their interests, rights or claims in relation to the Lawsuit. No amendment or modification of this Release shall be valid or binding on the Parties unless made in writing and signed on behalf of each of the Parties by their respective duly authorized representatives.

    (a).  A Party may waive any right under this Release only by written waiver duly signed by such Party, and no failure to exercise or delay in exercising a right under this Release shall constitute a waiver of such right. This Release and the Parties' obligations hereunder shall be binding on and inure to the benefit of the Parties

    (b).  Upon full compliance of the terms of this Agreement, each party expressly denies and expressly disputes any liability or that they engaged in any wrongful conduct whatsoever which can be construed or lead to the award of civil damages concerning the matters asserted in the Lawsuit.

    (c).  The Parties represent and warrant that: (i) the terms of the settlement as set forth in this Agreement have been negotiated in good faith and are equitable; (ii) they are legally competent to execute this Agreement and to accept full responsibility therefore; and (iii) this Agreement has been carefully read in its entirety by the Parties.

    (d).  No inference, assumption or presumption shall be drawn from the fact that a Party or its attorney prepared and/or drafted this Agreement. In executing this Agreement, the Parties acknowledge that each has consulted with and has had the advice and counsel of attorneys and that each has executed this Agreement after independent investigation and without fraud, duress or undue influence.

    3.04.  **Indemnification**. In the event that any Party shall fail to comply with any term, condition, obligation, covenant, warranty, or the like contained in this Agreement such Party shall indemnify, defend, save and hold the other Party harmless from any and all damage and/or liability arising from such failure to comply with the terms and conditions of this Agreement.

**ARTICLE IV**
**MISCELLANEOUS**

    4.01.  **Attorney Fees and Costs**. In the event any Party institutes an action or other proceeding to enforce any rights arising under this Agreement, the party prevailing in such action or

4

other proceeding shall be paid all reasonable costs and attorney fees by the other party, such fees to be set by the court and not by a jury and to be included in any judgment entered in such proceeding.

4.02.    **Integration**.  This Agreement, including the Recitals set forth above (which the Parties covenant are true, accurate and correct statements), represents the full and complete agreement between the Parties with respect to the subject matter set forth herein and is the complete expression thereof.  All other agreements, negotiations, and representations between the Parties pertaining to the subject matter of this Agreement, and to the extent not expressly set forth herein, are void and of no force or effect whatsoever.  This Agreement may not be amended or modified except in writing and signed by each of the Parties.

4.03.    **Governing Law**.  This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of Nevada.  Any lawsuit to enforce this Agreement or to prosecute any claim for breach of this Agreement shall be brought exclusively in the U.S. Bankruptcy District Court of Nevada located in Clark County, Nevada, and the Parties consent to jurisdiction and venue in such Court.

4.04.    **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of such counterparts shall constitute one agreement. To facilitate the execution of this Agreement, the Parties may execute and exchange this Agreement by facsimile, each of which shall be deemed a duplicate original.

4.05.    **Severability**.  The invalidity or illegality of any provision, term, or agreement contained in or made a part of this Agreement shall not affect the validity of the remainder of this Agreement.

4.06.    **Time of Essence**.  Time is of the essence of this Agreement and each of its provisions.

4.07.    **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the Parties, their respective Agents, heirs, personal representatives, transferees, successors and assigns, as the case may be.

4.08.    **Expenses**.  Each Party shall pay such Party's own costs and expenses incurred in connection with the negotiation and execution of, or otherwise arising out of the Lawsuit, this Agreement and the transactions contemplated hereby.

4.09.    **Effectiveness of Agreement**. The submission of this Agreement for examination does not constitute an agreement or an agreement to agree and shall vest no right in either Party hereto and is submitted as part of an offer of compromise and is inadmissible as evidence in the

MAC:06277-015 1789229_3 10/4/2012 11:27 AM

Lawsuit.  This Agreement shall become effective only upon execution and delivery thereof by all Parties.

        **IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth above.

Dated: October 22, 2012

By

Barry R. Moore

Dated: October 22, 2012

Janie Moore

Dated: October 22, 2012

ERGOM Holdings, LP

Barry R. Moore

Dated: October 22, 2012

BAMM Living Trust dated July 16, 2003.

Barry R. Moore, Co-Trustee

Janie Moore, Co-Trustee

Dated: October 18, 2012

William Gayler

MAC:06277-015 1789229_3 10/4/2012 11:27 AM

# Exhibit A

E-Filed: _____

**Marquis Aurbach Coffing**
DALE A. HAYES, ESQ.
Nevada Bar No. 3430
LIANE K. WAKAYAMA, ESQ.
Nevada Bar No. 11313
10001 Park Run Drive
Las Vegas, Nevada 89145
dhayes@maclaw.com
lwakayama@maclaw.com
Telephone:(702) 382-0711
Facsimile: (702) 382-5816
Attorney(s) for Plaintiffs

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>WILLIAM GAYLER,<br><br>                Debtor. | Case No:   BK-S-09-31603-MKN<br>Chapter:   7<br><br>Adversary Proceeding No. 11-01088-MKN |
| BARRY MOORE; JANIE MOORE; EROOM HOLDINGS, LP; and BARRY R. MOORE AND JANIE MOORE, CO-TRUSTEES OF THE BAMM LIVING TRUST DATED JULY 16, 2003.<br><br>                Plaintiffs,<br><br>       v.<br><br>WILLIAM GAYLER<br><br>                Defendant. | |

### CONFESSION OF JUDGMENT

Defendant, WILLIAM GAYLER (the "Defendant"), confesses to a judgment under 11 U.S.C. 523(a)(2)(A) in favor of the Plaintiffs Barry R. Moore, Janie Moore, Eroom Holdings, LP and Barry R. Moore and Janie Moore, Co-Trustees of the BAMM Living Trust dated July 16, 2003 (collectively as "Plaintiffs") in the principal amount of $750,000. Pursuant to provisions of NRS 17.090 through NRS 17.110, and any other applicable statutes, Defendant, having been first duly sworn upon oath, confesses and hereby acknowledges, admits and stipulates to the following:

Page 1 of 5

M&A:06277-015 1789046_1 10/4/2012 11:27 AM

1.    An Involuntary Chapter 7 Petition for Relief was filed against the Defendant on November 16, 2009.

2.    On March 29, 2010, the Bankruptcy Court entered an Order mandating that relief under Chapter 7 of the Bankruptcy Code was granted against Gayler.

3.    On or about March 15, 2011, Plaintiffs commenced an adversary proceeding to obtain a non-dischargeable judgment against Defendant pursuant to 11 U.S.C. 523(a)(2)(A) for actual fraud and 11 U.S.C. 523(a)(4) for defalcation while acting in a fiduciary capacity.

4.    As a result of a settlement conference held on September 11, 2012, the parties entered into a Settlement Agreement.

5.    Pursuant to the terms of the Settlement Agreement, Defendant is obligated to pay the Plaintiffs $50,000 within 90 days from entry of the Order approving the settlement agreement and after the appeal time of 14 days has run. Within one year from entry of the Order approving the settlement agreement and after the appeal time of 14 days has run, Defendant is obligated to pay the Plaintiffs an additional $100,000. The $150,000 in payments shall be referred to as the "Installment Payments."

6.    Upon the Defendant's default of either Installment Payment, the Plaintiffs may submit this Confession of Judgment for the full principal balance of $750,000 due and owing to the Plaintiffs, less any payments received, together with interest of ten percent (10%) per year beginning ten (10) calendar days after the notice of entry of this Confession of Judgment.

7.    Defendant has failed to timely make the Installment Payments as agreed upon by the parties.

8.    A non-dischargeable Judgment shall be entered in favor of the Plaintiffs and against Defendant under 11 U.S.C. 523(a)(2)(A) based on the allegations contained in the Adversary Complaint (Dkt. #1) and pleadings on file in this Adversary Proceeding.

9.    To support this Judgment, the Defendant agrees that it is established by a preponderance of the evidence that the Plaintiffs have satisfied each and every element required under 11 U.S.C. §523(a)(2)(A) and the Judgment is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

Page 2 of 5

MARQUIS AURBACH COFFING<br>10001 Park Run Drive<br>Las Vegas, Nevada 89145<br>(702) 382-0711 FAX: (702) 382-5816

10. Defendant agrees that the Plaintiffs may enter this Judgment against him with the Clerk of the U.S. Bankruptcy Court, District of Nevada in and for Clark County, Nevada which amount shall be paid with ten percent (10%) interest, with such interest beginning ten (10) calendar days after the notice of entry of this Judgment, until the total remaining amount owed is paid in full.

11. Defendant confesses that the $750,000 due and owing to the Plaintiffs is a valid debt under the laws of the State of Nevada.

12. Defendant is on notice that his obligations as to the satisfaction of this Judgment remain in effect even if Defendant is no longer domiciled or residing in the United States of America.

13. This Confession of Judgment is made with the agreement of Defendant that it may be recorded and filed as a Judgment and Judgment Lien against any real or personal property owned by Defendant as of the filing date of the Confession of Judgment with the Clerk of Court and continuing until complete satisfaction of the amount of this Confession of Judgment is paid in full to the Plaintiffs.

14. Defendant acknowledges that this debt shall be legally enforceable and full against Defendant and may be entered as a Foreign Judgment in any state.

15. Defendant agrees that the U.S. Bankruptcy Court, District of Nevada in and for Clark County, Nevada shall retain jurisdiction over this Judgment.

16. Defendant agrees to submit to the personal jurisdiction of Nevada, federal or bankruptcy court, in the event of any legal action or proceeding arising out of or relating to this Confession of Judgment including, without limitation, the enforcement of any default, breach, or non-compliance with this Confession of Judgment and the Settlement Agreement as approved by the Court.

17. Defendant confesses that the $750,000 debt is to be declared non-dischargeable in this or in any future bankruptcy proceeding and that such debt is exempted from discharge under the U.S. Bankruptcy Code.

M&A:06277-015 1789046_1 10/4/2012 11:27 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

18.    The parties agree that this Confession of Judgment embodies their mutual intent and that its terms and provisions are not to be construed more liberally in favor of, or more strictly against, any party. This Confession of Judgment shall not be construed as if it had been prepared by one of the parties, but rather as if it had been prepared by all of the parties.

19.    The undersigned declares, under penalty of perjury, that he has read this Confession of Judgment and had the opportunity to consult with an independent attorney, Jeffrey R. Sylvester of the law firm Sylvester & Polednak, regarding the terms and conditions of this Confession of Judgment, and has executed the same as a voluntary act in accordance with NRS 17.090 et. seq.

STATE OF NEVADA          )
                         )ss:
COUNTY OF CLARK          )

I, William Gayler, being first duly sworn, state that I have read the Confession of Judgment that all of the representations recorded in the Confession of Judgment are true and correct to the best of my knowledge and belief; and further that I am authorized to execute this Confession of Judgment on my own behalf in the understanding that I will be held solely liable under the provisions herein.

DATED this ___ day of _____, 2012.

By: _____
        WILLIAM GAYLER

SUBSCRIBED and SWORN to before me
on this 18 day of October, 2012.

_____
NOTARY PUBLIC

Christina Ablahani
Notary Public, State of Nevada
My Comm. Expires December 8, 2012
Certificate No.: 02-73904-1

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Page 4 of 5

M&A:06277-015 1789046_1 10/4/2012 11:27 AM

In accordance with NRS 17.110 and the interpretation of its predecessor in *The Humbolt Mill & Mining Co. v. Terry* this Confession of Judgment is submitted for the endorsement of the clerk of the court. 11 Nev. 237 (1867).

ENTERED this ____ day of _____, 2012.

_____
THE CLERK OF THE COURT

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Page 5 of 5

M&A:06277-015 1789046_1 10/4/2012 11:27 AM